UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GIUSEPPE VULTAGGIO,

      Plaintiff,

                                   Case No. 14-cv-12299
                                   HON. GERSHWIN A. DRAIN

v.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [#18], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#19] AND CANCELLING APRIL 28, 2015 HEARING**

## I.    INTRODUCTION

Presently before the Court are the following motions: (1) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed on October 30, 2014, and (2) Plaintiff's Motion for Summary Judgment, also filed on October 30, 2014. Responses were filed to each pending motion [Dkt. Nos. 22 and 24] and Defendant filed a Reply in Support of its Motion to Dismiss. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the resolution of these matters. Accordingly, both motions will be decided on the briefs. *See* E.D. Mich. L.R.

7.1(f)(2). For the reasons that follow, the Court will deny Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and will deny Plaintiff's Motion for Summary Judgment.

## II.   FACTUAL BACKGROUND

Plaintiff Giuseppe Vultaggio filed the instant action in the Macomb County Circuit Court on May 13, 2014, alleging claims of breach of contract, unjust enrichment, fraud and fraudulent misrepresentation, innocent misrepresentation and conversion stemming from a purported settlement agreement between Plaintiff and Defendant, Liberty Mutual Fire Insurance Company. Defendant removed the action to this Court on June 11, 2014.

In the Complaint, Plaintiff alleges he sustained a serious back and hip injury while working for Prince Macaroni of Michigan on February 20, 1988. At the time of Plaintiff's injury, Defendant provided workers' compensation insurance coverage to Plaintiff's employer. In 1988, Plaintiff began receiving workers' compensation benefits in the amount of $266.38 per week.

On February 7, 2008, Claims Specialist Christopher Kijovsky sent correspondence to Plaintiff stating in relevant part:

> This is a settlement offer I have prepared for you. Please note that this offer provides a benefit to you greater than what you are currently receiving from Liberty Mutual and the monthly payments would be

> directly deposited into an account of your choice.
> Also, please note that the monthly payment will be paid for the rest of your life with a minimum guarantee of 5 years. What this means is that if [you] were to pass away before 5 years of this benefit is paid the payments will continue to your noted beneficiary.

*See* Compl., Ex. A. According to Plaintiff, the settlement offer provided for a $10,000.00 lump sum payment, plus an annuity which paid $1,565.00 per month beginning in January of 2009, and, in return, Plaintiff would no longer receive the $266.38 in weekly payments. Compl., ¶ 11. Plaintiff further claims that the $1,565.00 monthly payments were guaranteed for a minimum of five years and if he expired prior to the five-year term, the benefits would be paid to his beneficiary. He also contends that if he were alive past the five-year term, the $1,565.00 monthly payments would continue for the remainder of his life.

Contrarily, Defendant claims that several offers were made during the parties' negotiation of the settlement agreement. *See* Def.'s Resp., Ex. D. Defendant claims that while it is true Plaintiff was offered a lifetime monthly benefit award, the payment amount was lower than the amount the parties ultimately agreed upon. *Id*. Specifically, Defendant argues that the first option extended by Mr. Kijovsky included a lump sum payment of $10,000.00, and monthly payments of $1,565.00, which were guaranteed only for five years. *Id*. The second option provided for a lump sum payment of $5,000.00 and monthly payments of $725.00, guaranteed for ten years. *Id*. With the

second option, the payments were to continue for life if Plaintiff was still alive past the ten-year guarantee. *Id.*

A hearing was held before Magistrate Rosemary Wolock on Defendant's redemption offer. During the hearing, the terms of the parties' agreement were placed on the record. Specifically, Defendant's attorney explained the parties agreed to a $10,000.00 lump sum payment plus an annuity that would pay monthly benefits in the amount of $1,565.00. *See* Plf.'s Mot. for Summ. J., Ex. B at 10. In exchange, the weekly payments of $266.38 would cease. *Id.* As to Plaintiff's claim that the monthly benefits were to continue if he was still living beyond the five-year term, the following exchange occurred between Plaintiff's interpreter[1] and Defendant's attorney:

> THE INTERPRETER: Okay, I explained to him that it continues for his lifetime but if he expires that you only cover the first five years.
>
> MR. SCHOENER: Right, right, and then after the five years the benefits stop upon his expiration.

*Id.* at 25.

After the hearing, the parties executed an "Agreement to Redeem Liability," authorized by the Workers' Compensation Act. Specifically, the Agreement to Redeem Liability states in relevant part:

---

[1] Plaintiff does not speak English.

> WHEREFORE, it is agreed to by and between the parties that the Agency may enter an order in this cause providing that the sum of NINETY-EIGHT THOUSAND FORTY-ONE DOLLARS ($98,041.00) BROKEN DOWN AS FOLLOWS: $10,000 CASH AND $88,041.00 FOR THE COST OF TH[sic] ANNUITY be forthwith paid by the employer/carrier to: Giuseppe Vultaggio
>
> and that upon such payment the liability of the employer/carrier for the payment of compensation for said injury shall be redeemed in accordance with Sections 418.835, 418.836 and R408.39 of the Workers' Disability Compensation Act except for medical potentiality covered by Medicare.

*See* Def.'s Mot. to Dismiss, Ex. B.

Additionally, Magistrate Wolock signed a Redemption Order, which stated in pertinent part:

> IT IS FURTHER ORDERED that the above sum be paid as follows:
>
> $ 88,041.00    cost of annuity, if applicable.  TO BE PAID $1,565.00 MONTHLY, GUARANTEED FOR 5 YEARS, BEGINNING 1-1-09

*See* Def.'s Resp. to Plf.'s Mot. for Summ. J., Ex. B.  The parties also executed a Non-Qualified Assignment and Release of Periodic Payment Obligation, which states in relevant part:

> Claimant has executed a settlement agreement or release dated 11-3-08 (the "Settlement Agreement") that provides for the Assignor [Liberty Mutual Insurance Company] to make certain periodic payments to or for the benefit of the Claimant as stated in Addendum No. 1[.]
>
> \*            \*            \*
>
> Addendum No. 1

Description of Periodic Payments

Payee: Giuseppe Vultaggio
Benefits: $1,565.00 payable monthly, guaranteed 5 years, beginning on 1/1/2009, with the last guaranteed payment on 12/1/2013

*Id.*, Ex. C.

Plaintiff claims that Defendant made all the $1,565.00 monthly payments until February of 2014 and then ceased making the payments for no valid reason.

## III. LAW & ANALYSIS

### A. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction. In analyzing a Rule 12(b)(1) motion,

> [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.), *cert. denied*, 513 U.S. 868 (1994)]. The court has wide discretion to consider materials outside the pleadings in assessing the validity of its jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

*Ashley v. United States*, 37 F. Supp.2d 1027, 1029 (W.D. Mich. 1997). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton*

*v. Brown*, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir. 1981), *cert. denied*, 461 U.S. 918 (1983)(emphasis in original)).

Defendant argues that the predicate issue herein is whether it fulfilled its obligations under the Agreement to Redeem Liability and Redemption Order, which can only be determined by the Workers' Compensation Bureau. Thus, this matter must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Contrary to Defendant's argument, the Workers' Compensation Bureau does not have exclusive subject matter jurisdiction over the instant action. Defendant relies on Michigan Compiled Laws § 418.841(1), which states "[a]ny dispute or controversy concerning compensation or other benefits shall be submitted to the bureau and all questions arising under this act shall be determined by the bureau or a worker's compensation magistrate, as applicable." MICH. COMP. LAWS § 418.841(1). However, this exclusive remedy provision is directed to claimants bringing an initial claim for workers' compensation benefits following an injury in the workplace and does not bar court review of a final redemption agreement.

This case involves a redemption agreement, which occurs only after a hearing and approval by a workers' compensation Magistrate. It is the sole means by which

an employer can terminate its liability. Once a redemption agreement is approved, the workers' compensation bureau's authority to review the agreement is limited to an appeal that must be taken within fifteen days of the initial approval by the Magistrate. Once the appeal period has expired, the redemption agreement becomes final and any disputes concerning the agreement are to be resolved by resort to the principles "applicable to the interpretation and construction of contracts." *Dubois v. Betz Industries*, No. 228391, 2002 Mich. App. LEXIS 796, *4 (Mich. Ct. App. Jun. 4, 2002) (concluding that the plaintiff had stated a viable claim requesting that the court void a redemption agreement based on lack of capacity).

Defendant offers no authority for its position that the workers' compensation bureau is the exclusive remedy for interpretation and construction of the parties' redemption agreement, which is the issue before this Court. The issue is not a dispute about "compensation or benefits," rather it concerns the intent of the parties in entering into the redemption agreement in 2008.

Defendant fails to offer any authority in support of its argument that this Court lacks subject matter jurisdiction over the instant action. Defendant cites to *Maglaughlin v. Liberty Mutual Ins. Co.*, 82 Mich. App. 708; 267 N.W.2d 160 (Mich. Ct. App. 1978), however this case is distinguishable from the present matter. In *Maglaughlin*, the plaintiff petitioned for, and received a favorable award of workers'

compensation benefits and the defendant appealed the decision. *Id.* at 709. While the decision was still on appeal, the plaintiff brought an action in state court for damages attributable to the defendant's failure to pay any benefits during the pendency of the appeal. *Id.* at 710. The *Maglaughlin* court concluded that whether the defendant was required to pay benefits during the pendency of the appeal was a "controversy concerning compensation" within the exclusive jurisdiction of the workers' compensation bureau. *Id.* at 710-11. This case involves a final redemption agreement and not a dispute concerning compensation during the pendency of an appeal.

Another case relied on by Defendant, *Holcomb v. Ford Motor Co.*, 108 Mich. App. 61; 310 N.W.2d 275 (Mich. Ct. App. 1981), also does not support its position. In *Holcomb*, the Michigan Court of Appeals concluded the trial court erred in granting the plaintiff's petition for final judgment on his award of workers' compensation benefits under MICH. COMP. LAWS § 418.863. *Id.* at 68. The *Holcomb* court reached this conclusion because the defendant's delayed application for leave to appeal with the Michigan Supreme Court had not been decided. *Id.* at 62, 67.

Lastly, Defendant's reliance on *Hartline v. Dana Corporation*, No. 233601, 2003 WL 1861480 (Mich. Ct. App. Apr. 8, 2003) is likewise misplaced. In *Hartline*, the Michigan Court of Appeals concluded that the "circuit court erred in entering judgment on an issue that was contemporaneously on appeal before the Workers'

Compensation Appellate Commission[.]" *Id.* at *1. The *Hartline* court explained that a decision by the commission must be final before a circuit court may enter judgment on an award. *Id.* at *2. As such, because the decision concerning benefits had been challenged and was still under review, the bureau had exclusive jurisdiction over the matter. *Id.*

While the Court cannot find a case directly on point with the instant matter, there is nonetheless ample authority supporting Plaintiff's position that courts have authority to enforce redemption agreements once they are final. *See Solo v. Chrysler Corp.*, 408 Mich. 345, 354-55; 292 N.W.2d 438 (Mich. 1980)(concluding that the court may exercise equity power to set aside a workers' compensation redemption agreement on the basis of mutual mistake of fact); *see also Badon v. General Motors Corp.*, 188 Mich. App. 430; 470 N.W.2d 436 (Mich. Ct. App. 1991) (concluding that the circuit court erred in setting aside a redemption agreement based on public policy grounds).

In *Allen v. Allen*, 141 Mich. App. 105; 366 N.W.2d 88 (Mich. Ct. App. 1985), the plaintiff had a divorce decree entered that included an order to pay child support. *Id.* at 106. Thereafter, a final order of redemption in favor of the plaintiff was entered against the plaintiff's employer, the city of Detroit. *Id.* Because the plaintiff was in arrears on his obligation to pay child support, the circuit court entered an order

appointing the Friend of the Court as receiver for the plaintiff's workers' compensation benefits. *Id.* Despite receiving notice of the circuit court's order, the city forwarded the compensation award to the plaintiff. *Id.* The circuit court entered judgment against the city for the amount of the redemption order. *Id.*

On appeal, the city challenged the subject matter jurisdiction of the circuit court over the final order of redemption. *Id.* at 106-07. In rejecting this argument, the Michigan Court of Appeals concluded that "[t]here is no controversy between the husband and his employer . . . ." *Id.* at 107. Here, similar to the situation in *Allen*, the dispute is not between Plaintiff and his employer. Rather, this action is between Plaintiff and his employer's insurance carrier and raises a breach of contract claim in addition to other claims.

Lastly, in *General Motors Corp. v. Weberman,* No. 210441, 2000 Mich. App. LEXIS 1502 (Mich. Ct. App. Oct. 3, 2000), the court held that "jurisdiction of the bureau is exclusive in matters where the employer-employee relationship is substantially involved." *Id.* at *3. In order to fall within the exclusive jurisdiction of the bureau, the employer-employee relationship must be "at the heart" of the plaintiff's claim. *Id.* at *4. Here, Plaintiff's relationship with his employer is "only incidentally involved" and therefore the bureau does not have exclusive jurisdiction over Plaintiff's claim. *Id.* at *4-6.

Accordingly, based on the foregoing considerations, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

### B. Plaintiff's Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable

to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

"A worker's compensation redemption is an agreement to settle the dispute between the parties." *Dubois*, 2002 Mich. App. LEXIS 796, at *3. "An agreement to settle a pending action is a contract that is to be governed by the legal principles that

-13-

are generally applicable to the interpretation and construction of contracts." *Id.* at *3-4. "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Shay v. Aldrich*, 487 Mich. 648, 660; 790 N.W.2d 629 (Mich. 2010). "[I]f the language of a contract is unambiguous, it is to be construed according to its plain meaning." *Id.* However, "if the language of a contract is ambiguous, courts may consider extrinsic evidence to determine the intent of the parties." *Id.*

As an initial matter, it appears that Plaintiff is moving solely for summary judgment on his claim for breach of contract. His present motion does not address his claims for unjust enrichment, fraud/fraudulent misrepresentation, innocent misrepresentation, or conversion.

As to Plaintiff's argument that Defendant breached the terms of the parties' redemption agreement, the Court cannot conclude as a matter of law that Plaintiff is entitled to summary judgment in his favor. Here, there is no ambiguity that the language of the various documents memorializing the parties' agreement do not reflect a lifetime benefits award. The parties' Redemption Agreement states in relevant part that:

> WHEREFORE, it is agreed to by and between the parties that the Agency may enter an order in this cause providing that the sum of NINETY-EIGHT THOUSAND FORTY-ONE DOLLARS ($98,041.00) BROKEN DOWN AS FOLLOWS: $10,000 CASH AND $88,041.00 FOR THE COST OF TH[sic] ANNUITY be forthwith paid by the employer/carrier to: Giuseppe Vultaggio

*See* Def.'s Mot. to Dismiss, Ex. B. Moreover, the parties also executed a Non-Qualified Assignment and Release of Periodic Payment Obligation which states that Plaintiff was to be paid benefits described as: "$1,565.00 payable monthly, guaranteed 5 years, beginning on 1/1/2009, with the last guaranteed payment on 12/1/2013." *See* Def.'s Resp. to Plf.'s Mot. for Summ. J., Ex. C.

Plaintiff mostly relies on the transcript from the hearing before Magistrate Wolock to argue that the parties agreed to a lifetime benefit award. However, the hearing transcript is parol evidence and therefore the Court may not rely on this evidence to determine the intent of the parties. *Shay*, 487 Mich. at 667 (stating that contracts are "subject to the parol evidence rule, which prohibits the use of extrinsic evidence to interpret unambiguous language within a document.") Similarly, Plaintiff's reliance on the February 2008 offer letter is parol evidence that is inadmissible to establish intent.

Plaintiff ignores the parties' written agreements in both his Complaint and in the present motion. However, the language of these documents unambiguously evidences the intent of the parties for a lump sum payment of $10,000 and an annuity of $88,041.00, which was to be paid by monthly installments of $1,565.00 for five years. The plain terms of the parties' agreements preclude this Court from concluding that Plaintiff is entitled to summary judgment in his favor on his breach of contract claim.

-15-

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [#18] is DENIED.

Plaintiff's Motion for Summary Judgment [#19] is also DENIED.

SO ORDERED.

Dated: March 31, 2015      /s/Gershwin A Drain
                           GERSHWIN A. DRAIN
                           UNITED STATES DISTRICT JUDGE